STATE OF MISSOURI ex rel. FRANCES M. BAR-
     TRAW, Respondent, v. C. F. LONGFELLOW,
     etc., Appellant.

St. Louis Court of Appeals, July 22, 1902.

1.  **City of St. Louis:** BUILDING INSPECTORS: CONSTRUCTION
    OF ORDINANCE OF CITY OF ST. LOUIS. Building inspectors
    in St. Louis are "assistants" of the commissioner of public build-
    ings, and as such they may be removed by the chief officer whom
    they assist.

2.  **Definition.** The meaning of the word "assistant" is defined by
    the court.

3.  **Construction of Charter of City of St. Louis.** The provisions
    of the charter and ordinances of the city of St. Louis touching
    removals from office of subordinate officials by their superiors, are
    fully discussed. (State ex rel. Knittel v. Longfellow, 93 Mo. App.
    364 (67 S. W. 665) followed.)

4 ——: ——. An officer, within the meaning of the St. Louis
    charter provision, forbidding the change of an officer's salary during
    the term for which he was elected or appointed, is one who, by

the local law, enjoys either an annual salary or a definite term of office. As to other officers not included in the above definition, it is competent for the municipal assembly to alter their salaries or tenures of office.

5. ——: ——. An ordinance referring to "all appointments of janitors, engineers or other persons," does not include inspectors of buildings. The words "other persons" do not reach a higher class of officials (such as building inspectors) than those enumerated, but only apply to those *ejusdem generis.*

6. **Notice.** Where an official notice is otherwise valid, it is not invalidated by the superfluous signature of another officer. The good part of the notice is not vitiated by the unnecessary addition.

7. **Mandamus.** The court suggests a doubt whether mandamus is available to compel recognition of a plaintiff as an officer, and a query whether a prior action against the city for salary constitutes an obstacle to mandamus.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

REVERSED AND REMANDED.

*Charles W. Bates* and *Alex. Nicholson* for appellant.

(1) No person has a vested right in a public office. Primm v. Carondelet, 23 Mo. 22; State ex rel. v. Davis, 44 Mo. 129; Givens v. Daviess Co., 107 Mo. 603. (2) At the time of respondent's removal he was not an officer but an assistant, and was removable without charges by the head of the department in which he was employed. Ordinance 18964, approved April 7, 1897; Charter of St. Louis, art. 4, sec. 14. (3) All parts of a law must be read and construed together and meaning given to them all in order to ascertain the true meaning of the whole law. State ex rel. v. Marion Co. Court, 128 Mo. 427.

*Leverett Bell* and *Carl Otto* for respondent.

(1)   Mandamus is the remedy for the wrong complained of herein.  State v. County Court, 41 Mo. 545; State v. Walbridge, 153 Mo. 194.   (2)   Under the facts of this case and the law applicable thereto, a peremptory writ of mandamus was properly issued. State v. St. Louis, 90 Mo. 19; State v. Brown, 57 Mo. App. 199; St. Louis v. Laughlin, 49 Mo. 559; Ex parte Neet, 157 Mo. 527.

BARCLAY, J.—Mr. Bartraw, the relator, brought this action to obtain a mandamus to defendant, as commissioner of public buildings of the city of St. Louis, to require him to recognize relator as inspector of buildings.  We need not specially describe the pleadings.

There is no dispute about the facts material to the decision.

Relator was duly appointed one of the inspectors of buildings, in defendant's department of public buildings, in October, 1899.   The office of inspector of buildings is one created by ordinance.  Part of the ordinance affecting this office (Rev. Ord. 1892, sec. 715) in force at the time relator was appointed inspector, is as follows:

"There shall be five inspectors of buildings appointed by the commissioner of public buildings, to be approved by the mayor, who shall be practical builders, and whose salaries shall be paid in monthly installments at the rate of $1,200 per annum each.   Said inspectors shall give bond to the city of St. Louis for the faithful performance of their duties, to be approved by the mayor and council.   The first appointment of inspectors of buildings shall be for the term ending on the first Tuesday in April, 1895, and thenceforward the appointments shall be made for the term of four years."

Afterwards, the ordinance above quoted was re-enacted with the word "six" instead of five, so as to provide for six instead of five inspectors (Ord. 18964, of 1897).

By section 704 of the revised ordinance of April 7, 1893, it is provided that:

"All appointments of janitors, engineers or other persons by the commissioner of public buildings, shall be subject to the approval of the mayor and president of the board of public improvements, and may be removed by the mayor, or by the commissioner and president of the board of public improvements, whenever the interests of the city require it."

This provision constitutes section 12 in the present municipal code (1901).

Relator continued to serve as inspector of buildings until October 31, 1900, at which time there took effect a notice given to him by the president of the board of public improvements and the deputy commissioner of public buildings (in the absence of his chief), declaring that relator's services as inspector of buildings would not be required after that time, and that he was removed from said employment and position at said date.

The reason of the removal, as the record shows, had no reference to any misconduct or deficiency in the performance of duty by relator, but was occasioned by want of adequate funds to meet the expense of his retention. No question of the sufficiency of the notice, in respect of its form, is raised; but relator asserts that it was inoperative to discharge him and that the attempt to remove him was unwarranted and invalid.

It appears that the present suit was begun, July 26, 1901. Relator had already brought an action before a justice of the peace, February 4, 1901, claiming three months' salary to be due him as inspector. That

action is yet pending, according to statements of both parties in the briefs of this court.

The cause at bar was tried upon the issues made on the alternative writ, the return thereto and relator's general denial of the new matter in the return.

The trial court found in favor of plaintiff and directed a peremptory mandamus to defendant, requiring him to recognize relator as inspector of buildings and to assign him to duty and to permit him to perform the functions of said employment..

Defendant took an appeal to this court in proper form.

At the trial the following additional fact appeared in evidence.

The city had duly enacted an ordinance in 1900 which amended section 715, above quoted, so as to read as follows:

"There shall be six inspectors of buildings appointed by the commissioner of public buildings, to be approved by the mayor, who shall be practical builders, and whose salaries shall be one hundred dollars per month each, payable monthly. Said inspectors shall give bond to the city of St. Louis for the faithful performance of their duties in the sum of five thousand dollars each, with two good and sufficient securities, to be approved by the mayor and council. The first appointment of inspectors of buildings shall be for the term ending on the first Tuesday in April, eighteen hundred and ninety-five." Municipal Code 1900, sec. 30.

That ordinance, however, became operative after relator, in 1899, had entered upon the duties of his appointment as inspector.

Certain provisions of the charter of the city of St. Louis require mention, as having some real or supposed bearing on the issues in this case.

Part of section 14, article 4 of the charter (Mun. Code 1901, p. 233, sec. 14) is as follows:

"The assistants of any officer shall hold their positions during good behavior unless otherwise provided by ordinance, but may be removed for cause by the mayor, or by the officer under whom they work, at his pleasure."

By section 43, article 4 (Mun. Code 1901, p. 242) it is provided that "the term 'officers,' whenever used in this charter, shall include all persons holding any situation under the city government or its departments, with an annual salary or for a definite term of office."

Section 32 of article 3 of the charter (Mun. Code 1901, p. 225, sec. 32) is as follows:

"The assembly shall have the power, by a vote of three-fourths of the members of each house, to transfer and distribute the powers and duties in part or in whole, of any office provided for in this charter, to another, or others, and in such case the performance of the powers or duties added to those of any office shall not entitle its officers to additional compensation, and in case the entire powers and duties of an office be so transferred and distributed, the compensation of the holder of such office shall cease, and he shall no longer be the officer thereof."

Part of section 26 of article 3 (Mun. Code 1901, pp. 209, 218), conferring legislative power upon the mayor and municipal assembly, declares that:

"They shall have the power within the city, by ordinance not inconsistent with the Constitution or any law of this State, or of this charter . . . to regulate and provide for the election or appointment of city officers required by this charter, or authorized by ordinance, and provide for their suspension or removal; and they shall establish the salaries of all officers and compensation of all employees, excepting day laborers, and jurors and witnesses, respectively, for their services; *provided,* that the salary of no officer shall be changed during the term for which he is elected or appointed, and that no other officer receiving a salary

shall receive any fees or other compensation for his services."

Section 28, article 4 (Mun. Code 1901, p. 239), is in these words:

"The municipal assembly shall, by ordinance, define the duties of all city officers, and may change, increase or diminish them in a manner not inconsistent with this charter."

1.   It will be readily seen, from the foregoing outline of this case, that its most important features fall within reach of a decision rendered by the presiding judge of this court in State ex rel. Knittel v. Longfellow, 93 Mo. App. (St. L.) 364, (67 S. W. 665). One point of difference in the facts of the two cases presents more sharply a question then determined, which, however, appears to suggest a few further comments. We refer to the fact that in this case it clearly appears that the relator was appointed to the office of inspector of buildings under ordinance No. 18964, above quoted, prior to the enactment of section 30 of the present municipal code.

The bearing of section 1334 of the municipal code (p. 710) was discussed in the opinion of this court already cited.   We may add that the conclusion then announced is further supported by the decision of the Supreme Court in State ex rel. Kane v. Johnson, 123 Mo. 43.

The effect of the ordinance relating to the inspection of buildings appears to us to warrant the classification of building inspectors, such as the relator was, as "assistants" of the commissioner of public buildings, within the purview of section 14, article 4 of the charter above quoted.   There can be no doubt that the commissioner of public buildings is himself an officer within the meaning of sections 14 and 43 of article 4 of the St. Louis charter, as he enjoys both an annual salary and a definite term of office.

The word "assistant" is susceptible of consider-

able variety of meaning, the circumstances and other recognized materials of interpretation. The word in the plural has been sometimes held to mean officers. Hawkings v. Newman, 7 B. & C. 613. An "assistant" was held not to be a deputy of his chief in United States v. Adams, 74 Fed. 351. In the latter case an "assistant" was defined to be "one who stands by and helps or aids another" (p. 351). The definition just quoted adheres closely to the primary meaning of the word as found in the ancient language from which it has been transmitted to us.

We shall not attempt to define the meaning of the term as it appears in the city charter further than to say that the relator, as a building inspector, was comprehended within it.

The consequence of the enactment of section 30 of the present municipal code was to change the nature of the municipal employment in which relator was engaged. The final ordinance made relator an employee instead of an officer, if the city had power by ordinance to make such a change in relator's status. We think that it undoubtedly had such power under the charter provisions already quoted. The relator no doubt remained an officer in some senses of that word but not in the sense in which the word is used in section 43 of article 4 of the charter. By retaining his situation after the change which section 30 of the municipal code underwent, relator became liable for removal as an assistant employee at the pleasure of the commissioner of public buildings. It is wholly immaterial (the removal being otherwise valid) that the notice to relator of his removal was also signed by the president of the board of public improvements with the evident intention of conforming to section 12 of the municipal code (p. 436, sec. 12). It was held in the Knittel case, already cited, that the words "or other persons" appearing in that section do not reach employees of the class to which relator belongs.

No question was raised in the circuit court of any vested right of relator to the office by virtue of the Constitution. None is therefore involved in this appeal. St. Louis v. Collins Realty Co., 155 Mo. 545.

2. In view of the conclusion to which the above remarks point, it becomes futile for us to consider whether there was fatal delay in instituting these proceedings for mandamus, or whether that writ is available to compel such acts on the part of a public officer as are here demanded, which the alternative writ declares to be "to recognize the relator as an inspector of buildings in St. Louis and assign him to duty as such and to permit him to perform the functions thereof," or whether the pendency of relator's prior action for salary on the same account constitutes any obstacle to him in this litigation.

For a more complete expression of our views we refer again to the Knittel decision, which deals with some of the most important phases of this action, and agree that this judgment be reversed and the cause remanded with directions to enter a judgment denying the peremptory writ, with costs. *Bland, P. J.,* and *Goode, J.,* concur.