## W. Frank Carter, Petitioner, et al.,[1] v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 78878, 78879, 78880, 78881.   Promulgated June 8, 1937.

*David Baer, Esq.*, for the petitioners.
*William E. Davis, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Emmet T. Carter; Ada Davis Burkham, Executrix of the Estate of Robert Burkham, Deceased; and Harold R. Small.

OPINION.

HILL: Petitioners allege that respondent, in determining the deficiencies, erred in treating as distributable income of the partnership and including in taxable income of each of the petitioners, other than the estate of Robert Burkham, deceased, their respective proportionate interests in the amount paid to the estate of decedent during the taxable year, pursuant to the partnership agreement of January 1, 1927. Substantially, the position of the petitioners is that the sum paid to the deceased partner's estate was that portion of the income from fees received by the partnership which was due the decedent's estate, and was received by the partnership as trustee for such estate.

The facts were stipulated by the parties, and on this issue, among other things, it is stated that neither of the petitioners nor any members then constituting the copartnership "received any part of the sum  *  *  *  paid to the estate of Robert Burkham, deceased, but pursuant to the terms of the agreement of January 1, 1927 herein referred to, said sum was received by the co-partnership with the duty imposed to pay the same to the said estate of Robert Burkham, deceased, which duty was duly performed, as aforesaid."

The meaning intended to be expressed in the quoted stipulation (which we have not included in our findings of fact above) is not entirely clear, but we need not construe it. If it was meant to say that the money out of which the sum in controversy was paid to the decedent's estate was not first "received" by the partnership it is contrary to the facts otherwise clearly established by the record and must be rejected. *William Ernest Seatree*, 25 B. T. A. 396; *Volunteer State Life Insurance Co.*, 35 B. T. A. 491. If the parties intended to stipulate that the sum was received by the partnership not as its own property but in trust for the estate of the deceased member, then the stipulation amounts to a legal conclusion and must be disre-

garded. Unless the fund when received belonged to the partnership, obviously it could not constitute distributable income taxable to the members. This involves the very question which has been submitted to the board for decision. "A stipulation concerning the legal effect of admitted facts is ineffective, and will be treated as a nullity." *Swift & Co.* v. *Hocking Valley Railway Co.*, 243 U. S. 281, 289. If the parties meant to stipulate that the fund was not actually distributed to the members, it is of no materiality. In any event, therefore, it will be disregarded.

It is conceded by all parties that the death of Robert Burkham dissolved the old partnership, and that the new partnership organized by the surviving members paid the amount in controversy to the decedent member's estate under and pursuant to the terms of the partnership agreement of January 1, 1927; also that the principal purpose of the agreement was to eliminate a partnership administration upon the death of a partner and an accounting over a long period of time by the surviving partners.

Solution of the problem presented here depends upon whether the sum paid to Burkham's estate represented his share of fees earned by the partnership prior to but uncollected at the time of his death, or whether such payments constituted the consideration paid by the surviving members for Burkham's interest in the old partnership and its assets. *Bull* v. *United States*, 295 U. S. 247.

The nature of the transaction, we think, is fully disclosed by the terms of the partnership agreement pursuant to which it was carried out, which provided that in the event of death of any member of the firm his heirs, executors, or administrators should receive a sum equal to one-half of the amount actually received by such deceased partner during the two calendar years next preceding such death, "in lieu of all interest which the heirs, executors or administrators of such deceased partner may have in any fees received by the firm subsequent to the date of such death * * * and in full payment of the interest of such deceased partner in the library and office equipment of the firm." The partnership agreement further recited that "each member of the firm hereby agrees in the event of his death that no administration of the firm or its assets shall be required, and waives all right thereto and agrees that the payment made to his heirs, executors or administrators as above provided, shall be taken and received by them in full payment for his interest in the firm and its assets."

The conclusion seems inescapable to us that by the payment of a definitely ascertainable consideration, which is the amount here in controversy, the surviving partners of the old partnership purchased all of the interest of the deceased Burkham in the firm and its

assets. The parties have stipulated that one of the purposes of the partnership agreement was to fix at death a definite sum for payment to the estate of a deceased member, regardless of whether, in the absence of such agreement, the amount payable to the deceased partner's estate for his interest in the partnership would have been greater or less than the amount fixed by the agreement.

Whether the interest of the deceased Burkham had in fact a fair value of more or less than the amount paid under the contract, and whether or not the survivors derived a profit from their purchase of his interest for such sum, does not appear from the record. No question is raised on this point. Likewise, it does not appear what assets, if any, the partnership owned other than a library and office equipment of undisclosed value. The petitioners offered no evidence as to these matters. But in the state of the record before us, they are in any event immaterial.

The fact remains that the surviving partners purchased the interest of Burkham in the firm and its assets, for a stated consideration. Thereupon, they became the exclusive owners of all uncollected fees, whether the services for the rendition of which such fees were received were performed either prior or subsequent to his death. It was out of such fees that the amount in question was paid to Burkham's estate. The amount, therefore, constituted distributive income of the new partnership when received, and is taxable to the petitioners to the extent of their respective interests, whether in fact distributed to them or not. (Sec. 182 (a), Revenue Act of 1932.)

The partnership did not act in a fiduciary capacity in respect of any of the fees collected after the death of Burkham. His estate had no interest therein. Under the partnership contract it had only the right to demand payment of the stipulated amount. It was not entitled to payment out of fees; and in case no fees had been collected within the time fixed for payment, the estate would still have been entitled to receive the amount agreed upon, and the partnership could have fully discharged its obligation by payment out of any fund, whether or not it embraced fees collected subsequent to Burkham's death.

In *Willard C. Hill*, 14 B. T. A. 572, a partnership was formed under an agreement which provided, among other things, that upon the death of any partner there should be paid to his estate for a period of years the share of partnership earnings to which the deceased partner would have been otherwise entitled, and that upon the completion of such payments the business should become the sole property of the surviving partners. We held that the partnership agreement provided for the sale of the interest of a deceased

partner to the surviving partners, and that there should be included in the net income of each surviving partner his distributive share of all amounts paid in accordance with the terms of the partnership agreement, to the estate of the deceased partner. In that connection we said: .

A partner may not avoid the income tax under an agreement by which his share or a portion of his share of the profits of the partnership are to be paid to the estate of a deceased partner in the acquiring of such deceased partner's interest in the assets of a prior partnership.

Our decision in the cited case was affirmed in *Hill* v. *Commissioner*, 38 Fed. (2d) 165. See also *Benedict* v. *Price*, 38 Fed. (2d) 309; *Pope* v. *Commissioner*, 39 Fed. (2d) 420; *Arthur C. Hilmer*, 27 B. T. A. 1165; cf. *Lester G. Hathaway*, 16 B. T. A. 1318.

In *Bull* v. *United States, supra*, the Supreme Court stated the applicable rule as follows:

Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon the firm profits and the estate is not [citing with approval *Hill* v. *Commissioner, supra*].

For the reasons indicated respondent's determination in respect of the first issue is approved.

The conclusions reached above are not in conflict with our decision in *Gussie K. Barth*, 35 B. T. A. 546. The latter case is distinguishable on the facts. There the partnership contract provided that "the partnership shall not be immediately dissolved by reason of the death of a partner but his interest therein shall be determined" by payments to his widow for a period of three years of specified percentages of what would have been the deceased partner's distributive share in the proceeds from the business if he had remained alive. The amount received by Barth's widow did not represent payment for capital assets. In the instant case, the old partnership owned tangible assets and the amount paid to the decedent's estate was for his interest in the old partnership, including such assets.

Furthermore, in the *Barth* case, the question presented was whether the amount paid by the surviving partner constituted income taxable to the widow of the deceased partner. Here the question is whether the amount paid to the decedent's estate by the surviving partners, having been paid out of income (that is, out of fees collected by them), constituted distributive income taxable to the members of the new or succeeding partnership. Since the transaction before us was clearly a purchase and sale of the deceased

partner's "interest in the old partnership and its assets", the consideration paid by the new partnership out of income is taxable to the members of that partnership, whether or not the consideration so paid also represents *in whole or in part* taxable profit to the decedent's estate. In no event, therefore, does the *Barth* case rule the decision in the instant case.

The second issue involves the question whether the salaries received during the taxable year by Robert Burkham and Emmet T. Carter from the board of education of the city of St. Louis, for their services as "attorney" for said board, are subject to the Federal income tax. That the board of education was a political subdivision of the State of Missouri, engaged in the exercise of essential governmental functions, is conceded. The controversy is whether said individuals were officers or employees of the board, or whether they were independent contractors.

The term "officer" is defined in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, as follows:

An office is a public station conferred by the appointment of government. The term embraces the idea of tenure, duration, emolument and duties fixed by law. Where an office is created, the law usually fixes its incidents, including its term, its duties and its compensation. * * * The term "officer" is one inseparably connected with an office; * * *

The Missouri courts have also defined the term. In *State ex rel. Walker* v. *Bus*, 135 Mo. 325; 36 S. W. 636, it is stated that an individual who is invested with the authority and is required to perform the duties incident to an "office" is a "public officer." And again "an officer * * * is one who by the local law enjoys either an annual salary or a definite term of office." *State ex rel. Bartraw* v. *Longfellow*, 95 Mo. App. 660; 69 S. W. 596.

The Supreme Court of Missouri, in *State ex inf. McKittrick* v. *Whittle*, 333 Mo. 705; 63 S. W. (2d) 100, 102, said:

A public office is defined to be "the right, authority, and duty, created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of government, to be exercised by him for the benefit of the public." Mechem, Pub. Off. 1. The individual who is invested with the authority, and is required to perform the duties, is a public officer.

The courts have undertaken to give definitions in many cases; and while these have been controlled more or less by laws of the particular jurisdictions, and the powers conferred and duties enjoined thereunder, still all agree substantially that if an officer receives his authority from the law, and discharges some of the functions of government, he will be a public officer [citing among others *State ex rel. Walker* v. *Bus, supra*].

Petitioner Emmet T. Carter and the decedent Burkham, we think, come well within the definitions above given. The school board was empowered by the state legislature to appoint such "officers" as it

might deem necessary and proper, and to fix their compensation; also to make rules and regulations for the government and management of the public schools and school property in the city of St. Louis. Pursuant to such authority, the board promulgated rules and regulations which provided that the "officers" of the board should include an "attorney" elected for a term of four years, prescribed the duties of the attorney, and required bond in the sum of $10,000 for the faithful discharge of such duties. The salaries of both Carter and Burkham were fixed by the board on a yearly basis, payable monthly.

However, respondent contends that neither individual mentioned was an "officer" for the reason that he was not required to take an official oath of office and further that the "office" of attorney could be created only by the legislature and not by the board of education.

These contentions are not supported by the weight of authority. In *Miller* v. *Warner*, 59 N. Y. S. 956, 957, it was pointed out that a public office may be created by the legislature or any municipal board or body authorized by the legislature to create one, and, as indicated by the Missouri decisions hereinabove referred to, although not specifically discussed, the same rule appears to prevail in that state. Our attention has not been called to any contrary decision nor to any decision holding that an official oath of office is necessary in the absence of such requirement by the creating authority. No oath of office was required in the instant case.

In *State ex inf. McKittrick* v. *Whittle, supra*, it was held (1) that a school district or board of education in Missouri was a political subdivision of the state, performing the duties of the state in the conduct and maintenance of the public schools, and (2) that Whittle, who was a school director, was a "public officer" within the definition of that term hereinabove quoted from the court's opinion, although neither the definition nor the court's opinion makes any reference to an oath of office.

In *State ex rel. Bartraw* v. *Longfellow, supra*, the Court of Appeals at St. Louis held that the relator was an "officer" under his appointment as an inspector of buildings, and remained such until his status was changed to that of an employee by the later enactment of an amendatory ordinance. The appointment was made under authority delegated by the state legislature to the municipality of St. Louis, and under the municipal code which defined the term "officers" as including "all persons holding any situation under the city government or its departments, with an annual salary or for a definite term of office."

The relator in the cited case was required to give a bond for the faithful performance of his duties, but it does not appear that he was required to take any oath of office. Nevertheless, as above stated, he

was held by the Missouri court to be an "officer" under his original appointment. The essential facts in that case are strikingly similar to the instant proceedings.

In any event, if the petitioner Emmet T. Carter and the decedent Robert Burkham were not "officers", certainly they were, in our opinion, "employees" of the board of education. In *Burnet* v. *Livezey*, 48 Fed. (2d) 159; affirming 15 B. T. A. 806, the qualifications of an "employee" are fully discussed and distinguished from an independent contractor, in relation to facts in all material respects the same as in the case at bar. We need not repeat the discussion here. We hold that Carter and Burkham were "officers or employees" of a political subdivision of the State of Missouri, and the salaries received by them as such are exempt from Federal income tax. Respondent's action on this issue is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*