*Decision will be entered under Rule 50.*

ESTATE OF BAVIER C. MILLER, BY NORTHERN TRUST COMPANY, A CORPORATION, AND MRS. GRACE M. HASKINS, EXECUTORS AND TRUSTEES UNDER THE WILL OF BAVIER C. MILLER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84444. Promulgated September 8, 1938.

*Jesse I. Miller, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

ARNOLD: The principal issue in this proceeding is whether the partnership agreement provided for a sale of the decedent's partnership interest to his surviving partners, or whether that agreement contemplated a continuation of the partnership with decedent's legal representatives sharing in the profits the same as decedent would have shared had he lived. All of the facts have been stipulated, including the amount of the partnership's net income for the taxable year. In accordance with the terms of the partnership agreement the surviving partners paid the legal representatives of the decedent $17,882.16 during the taxable year, and we have to determine whether these payments represented a portion of the purchase price of decedent's partnership interest by the surviving partners or whether it was income to petitioner's estate as the estate's proportionate part of the partnership earnings.

Petitioner contends that the transaction provided for in the partnership agreement and carried out as hereinabove set forth, constituted a sale; that the decisions of this Board and the Federal courts support this view; that the Illinois courts have held this identical transaction to be a sale in *Northern Trust Co.* v. *Stewart*, *supra*; and, that the decision of the state court is binding upon this Board in so far as it states the local law applicable to partnership contracts.

The respondent's brief concedes that the Government is taking an opposite position in this proceeding from the position which it has

taken in the *Lyman M. Drake* and *Clarence S. Pellet* proceedings, Docket Nos. 79653, 85261, 79648, and 85262, which proceedings involve the same partnership agreement, the partnership net income for the years 1932 and 1933, and two of the surviving partners of this decedent. The respondent's position is that the Government is entitled to its tax on the net income of the partnership, and that, in order to protect the Government's revenues, it is necessary to include in the taxable income of this petitioner, and in the taxable incomes of the surviving partners, that portion of the partnership income attributable to the decedent's interest. Whether petitioner or the surviving partners pay the tax on this portion (20.442 percent) of the partnership net income depends upon whether the partnership agreement provided for a sale, or a continuation of the partnership with the decedent's legal representatives participating in the earnings.

The partnership agreement provides, *inter alia*, that upon the death of any partner his interest "then remaining in said business shall cease"; that the deceased partner's interest should be "divided between said surviving co-partners *per capita*"; and that the profits to be paid to the decedent's legal representatives should be borne "by the parties to whom such interest shall pass *per capita*." These provisions definitely terminate the partner's interest upon death and provide for a taking over of that interest *per capita* by the surviving partners, binding each survivor, individually, to pay his proportionate part of the amount due the decedent for his interest in the partnership. The yardstick that the parties agreed to use in measuring the value of a deceased partner's interest was the share of the profits which the decedent would have been entitled to had he lived an additional 30 months, and the deceased, while living, agreed for himself, his heirs, executors, administrators, and assigns that the payment of this determinable sum should extinguish all his interest in the partnership at the time of his death and all claims that he might have against the firm.

One indication that the partners recognized that their interests in the firm had value under the articles of copartnership is contained in the paragraphs dealing with the expulsion of a partner for breach of the partnership agreement. The partners agreed that the penalty for any such breach was the immediate dissolution of the partnership as to such member, a balancing of accounts as between the firm and the guilty party, and the forfeiture by the partner violating the agreement of "all claim or any other interest in and to the value of the business and good-will of said co-partnership as fixed and liquidated damages for his breach of this agreement." As further evidence of the value of a partner's interest, the parties agreed that, if the guilty partner refrained from engaging in the insurance

business in Cook County in any capacity, directly or indirectly, in consideration thereof he should receive a sum equal to one-half of what would have been his share in the profits of the firm for a period of three years.

Another indication that the partners recognized that their interest in the firm had value was the right granted to buy a deceased partner's interest by payment of a lump sum equal to his share of the firm's profits for the 30 months preceding his death, thereby clearly indicating that the sum to be paid was determinable by the deceased partner's interest in profits, not as such, but as a yardstick to value his interest in the partnership at the time of his death.

Furthermore, the provision for payment to the legal representatives of a deceased partner of his share in the partnership earnings up to the date of his death indicates that the partnership was not to be continued for a period of 30 months after death and that his right to share in the partnership earnings, as such, was to end when he became no longer active in behalf of the partnership.

Following the provisions for the payment of the pro rata share of earnings during a period of 30 months after death, to which a deceased partner would be entitled had he lived, it is provided that "in lieu of the provision here made for the payment of the interest of a deceased partner in said co-partnership" such interest may be acquired by paying within 60 days after death an amount equal to the deceased partner's share of earnings during the 30 months next preceding death, at the option of the surviving partners. This paragraph of the agreement is clearly one for the purchase and sale of a deceased partner's interest in the firm at the time of death. The expression in this paragraph, "in lieu of the provision here made for the payment of the interest of a deceased partner in said co-partnership", evidently refers to the right given in the preceding paragraph to pay for a period of 30 months after death the share of the profits which would have accrued to a deceased partner had he lived, and shows that the parties to the agreement intended the money to be paid under either method was "for the payment of the interest" of a deceased partner, and was not a distribution of partnership earnings, as such.

While our own interpretation of the partnership agreement convinces us that the parties intended to realize on their interests in the case of the death of any one of them, by binding the survivors to purchase the interest of the deceased partner, we need not rely solely upon our personal convictions, as we have the benefit of a court interpretation of the agreement. Subsequent to the death of Bavier C. Miller the life tenants and the remaindermen under his will became involved in a dispute as to whether the payments under the partner-

ship agreement represented income or corpus. The testamentary trustees under the decedent's will filed a bill in equity in the Superior Court of Cook County requesting the court to construe the will and agreement, and to instruct them as to the distribution of the payments received. The trustees were joined in this request by the other parties in interest. By its decree of November 12, 1935, the court fully discussed the will and partnership agreement, and held that the agreement provided for a sale and that the payments represented corpus and not income distributable to the life beneficiaries. The court retained jurisdiction of the subject matter and the parties to the action for the purpose of passing upon any further question that might arise on petition of either party in carrying out the trust pursuant to the terms of the decree.

Thereafter, on November 30, 1935, a new petition was filed by parties interested in the prior action, which petition the Superior Court dismissed by its order of January 21, 1936. The appeal to the Appellate Court followed, and in 289 Ill. App. 286, the court, after reviewing the Superior Court's decree of November 12, 1935, and the other facts, held that the decree of November 12, 1935, was final and binding, and affirmed the Superior Court in its action of January 21, 1936, upon the ground that the petition of November 30, 1935, presented a renewal of the same questions already decided. The Appellate Court set forth at length the earlier decree of the Superior Court in interpreting the partnership agreement now before us with respect to the provisions of Bavier C. Miller's will. We quote the following findings of the Superior Court which were incorporated in the decision of the Appellate Court:

\*       \*       \*       \*       \*       \*       \*

That at the time of the making of said co-partnership agreement, it was the intention of the parties thereto to acquire and purchase the interest of any deceased partner by the payment to his legal representatives of a sum of money, the amount of which should be equal to the amount of the profits which such deceased partner would have received had he lived and continued to be a member of said firm.

That under the terms of said articles of co-partnership, the legal representatives of said Bavier C. Miller did not become partners in said firm and were not entitled to share in any profits nor were they required or obliged to pay or share in any losses which might be sustained in carrying on said business by the surviving members thereof.

That the legal representatives of said Bavier C. Miller did not have the right to participate and did not participate in the affairs of said business so carried on by the surviving members and were not required to nor did they contribute in any way to the success or operation of said business.

That said legal representatives did not contribute any money, property or other capital work or labor to the business carried on by said surviving members after the death of said Bavier C. Miller.

That prior to 1901 when the said Bavier C. Miller became a member of said firm of Critchell, Miller, Whitney & Barbour, and for many years prior thereto,

the said Bavier C. Miller had been associated with others in the insurance brokerage business in the said City of Chicago, and thereby became and was well and favorably known to many persons requiring the service of insurance agents and brokers.

That by reason of such prior experience and by reason of his membership in the firm of Critchell, Miller, Whitney & Barbour, and by reason of extensive advertising, the firm of which deceased was a member became well and favorably known to the insurance public and there was thereby created a large and valuable good will by said firm in the insurance world in said city, and which good will existed and was of large value at the time of the death of said Bavier C. Miller.

That said firm of Critchell, Miller, Whitney & Barbour was at the time of the death of said Bavier C. Miller, one of the large and favorably well known insurance agents or brokers in said city, doing an annual business of between three and four million dollars in insurance premiums, and that by reason thereof, said firm had created and established in the insurance field a large and valuable good will which enured [inured] to the benefit and advantage of the surviving members of said firm and which would have been of comparatively little value if the death of said Bavier C. Miller had worked a complete and final termination of the business formerly carried on by said firm.

That said Bavier C. Miller and his co-partners were men of large experience in the insurance field and each had built up during their partnership association an individual clientele; that the value of an insurance agency and brokerage business consists largely of the probability that insurance originally written as a result of the efforts of a member of the agency, will be renewed from year to year through the same agency; that the value of the tangible assets of the partnership existing at the time of the death of Bavier C. Miller was small in comparison with the value of its good will and that after the death of Bavier C. Miller, his personal clientele was solicited by the surviving members for a continuation of the business originally procured by Bavier C. Miller, and that the efforts of the surviving members in that respect for a limited period of time met with a substantial degree of success.

That it was the intention and purpose of all of the members of said firm, including said Bavier C. Miller in his lifetime, to keep and conserve said good will, whereby they provided and agreed that upon the death of any partner the survivors should become entitled to the good will so created and established by paying to the legal representatives of a deceased partner, a sum of money, the exact amount of which would be an amount equal to the share of the profits received by or credited upon the books of the firm to the deceased partner during the period of thirty months next preceding his death; or a sum of money the exact amount of which should be ascertained and determined at the expiration of thirty months after the death of any partner and which amount would be equal to the profits to which such deceased partner would be entitled had he lived and continued as a partner in said firm.

And the court finds that the payment of said sum of Fifty-five Thousand Three Hundred Thirty-Eight Dollars and Ninety-Five Cents ($55,338.95), to the legal representatives of said decedent constituted a purchase by the surviving members of the interest which said decedent had in said firm at the time of his death, and was in extinguishment of any and all interest which decedent or his estate might have in the assets, good will or other property belonging to said co-partnership at the time of the death of said Bavier C. Miller.

That the death of said decedent dissolved the then existing partnership and that after the death of said decedent, his legal representatives had no right,

title or interest in said co-partnership nor in any of its property or assets, other than a claim against the surviving members of said firm in their individual capacities, under their agreement for the purchase of the interest of said decedent as specified, and set forth in said articles of co-partnership as extended.

In addition to the decision of the Illinois court we have been referred to the opinions of the Federal courts and this Board which have determined the principle here involved in petitioner's favor. In *Hill* v. *Commissioner*, 38 Fed. (2d) 165, affirming 14 B. T. A. 572; certiorari denied, 281 U. S. 761, the First Circuit was asked by a surviving partner of an insurance agency and brokerage business to permit the deduction of payments, made to the estate of a deceased member in accordance with the terms of the partnership agreement, as ordinary and necessary expenses in arriving at the partnership net income and the distributive shares of the partners therein. The terms of the partnership agreement, as to Hill, were substantially the same as the partnership agreement here in question, except as to the period of time over which payments were to be made to the deceased partner's estate. The court and this Board held that the payments made to the estate were not deductible as ordinary and necessary expenses because such payments were made by the surviving partners in the purchase of a capital asset. The court pointed out that, even if the new partnership agreed to pay the estate of the deceased member out of the net profits of the business of the new partnership, it would still be the purchase of a capital asset out of the earnings of the new partnership which belonged to and otherwise would have been distributed to the partners. See also *Benedict* v. *Price* (U. S. Dist. Ct.), 38 Fed. (2d) 309; *Pope* v. *Commissioner* (C. C. A., 1st Cir.), 39 Fed. (2d) 420, affirming on this point, 14 B. T. A. 584. Cf. *Bull* v. *United States*, 295 U. S. 247; *W. Frank Carter*, 36 B. T. A. 60; and *City Bank Farmers Trust Co., Executor*, 29 B. T. A. 190.

Although the Supreme Court held in *Bull* v. *United States, supra,* that the estate of a deceased partner was liable for income tax on its share of the firm's profits for the agreed period after the partner's death, it also recognized that situations might arise where such payments would not be taxable as income. In that case the articles of copartnership provided that a deceased partner's estate should "receive the same interests, or participate in the losses to the same extent" as the deceased partner would if living. Here there is no such provision as to participation in losses. Furthermore, the Court stated that "Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon firm profits and the estate is not." In our opinion this is ex-

actly what the partners of Critchell, Miller, Whitney & Barbour intended by their agreement of May 25, 1927, when they provided that the deceased partner's interest should cease at death, his interest should be divided among the surviving partners *per capita*, and the profits to be paid the decedent's estate should be borne by the parties to whom his interest had passed *per capita*.

In arriving at our conclusion we have examined the decisions in *Walter T. Gudeon*, 32 B. T. A. 100; *Gussie K. Barth*, 35 B. T. A. 546; *Helvering* v. *Smith* (C. C. A., 2d Cir.), 90 Fed. (2d) 590, and others, but find them distinguishable either as to the facts involved or as to the principle considered.

Considering all the facts and circumstances herein, together with the cited authorities, it is our opinion that the agreement of May 25, 1927, as extended, provided for a sale of the decedent's interest in the partnership to the surviving partners, that the surviving partners individually obligated themselves to purchase the interest of any partner dying, that payments received pursuant thereto represented a part of the corpus of the decedent's estate, and that no part of the profits of the partnership should be returned by petitioners as taxable income of the decedent's estate.

In this view of the principal issue it becomes unnecessary to consider petitioner's second allegation of error, which was in the nature of an alternative issue, although not specifically pleaded as such.

*Decision will be entered for the petitioner.*