ESTATE OF GEORGE R. NUTTER, EDWARD F. McCLENNEN, E. LOUISE MALLOCH AND ALFRED L. FISH, EXECUTORS UNDER THE WILL OF GEORGE R. NUTTER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES R. NUTTER AND MEDORA A. NUTTER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 99701, 104422. Promulgated January 7, 1942.

36

*Allison L. Newton, Esq.*, for the petitioners.
*Davis Haskin, Esq.*, for the respondent.

## OPINION.

DISNEY: The Commissioner added $24,533.19 to the gross estate of the decedent because of the fact, alleged in the petition and admitted in the answer, that the petitioners duly elected to have the property includable in gross estate valued in accordance with the method authorized by subdivision (j) of section 302 of the Revenue Act of 1926, as added by section 202 of the Revenue Act of 1935, that is, because the property was to be valued as of one year after the death

of the decedent and the respondent had included in such value amounts of interest and dividends received by the petitioners between the date of death and the optional date of valuation. Following the decision in *Maass* v. *Higgins*, 312 U. S. 443, the respondent concedes error on this issue. A related issue suggested in the stipulation, but not in the pleadings, arises as to whether there should be included in decedent's gross estate $3,038.89 interest and dividends accrued but not received on February 21, 1937, the date of decedent's death, or on the other hand $2,073.75 interest and dividends accrued but not received on February 21, 1938, the optional valuation date. Under the *Maass* case we hold that only the amount of $3,038.89 accrued but not received at the date of decedent's death should, as to this issue, be included in the gross estate, and that the $2,073.75 should not.

The Commissioner also added $34,069.99 to the decedent's gross estate. The explanation of the item in the notice of deficiency is "Interest in partnership Nutter, McClennen & Fish." The figure is the amount of 8 percent of the profit of the firm from March 1, 1937, to August 31, 1938. Upon brief the respondent takes the position that the amount represents the value of the decedent's interest in the partnership of which he was a member at the time of his death, and under the agreement of partnership.

The petitioners, relying upon *Bull* v. *United States*, 295 U. S. 247, and language therein as to partnerships with no capital investment and no tangible assets, contend in substance that the partnership was one for the practice of law, that no capital was invested, that there were no more than negligible tangible assets, that receipt of the percentage by the estate after the death was contingent upon continuance of the partnership and the earning of profits, that therefore amounts derived from or growing out of the partnership can be included in the gross estate only to the extent of partnership income prior to the decedent's death, and that amounts paid to the estate based upon partnership earnings after the decedent's death constitute not gross estate, but income to the estate. In our opinion, this view disregards the fact that there were in this case capital and tangible assets in amounts not negligible, and further neglects the specific agreement between the partners and the language of the *Bull* case as to just such an agreement. First: In this matter there appear to have been both an investment of capital in, and tangible property owned by, the partnership and a clear recognition by the partnership in the partnership agreement that each partner had a capital interest; whereas in the *Bull* case there was neither capital interest nor tangible property owned by the partnership. In the instant proceeding, the partnership balance sheet on February 28, 1937, the date nearest the death of the decedent, sets up for the partnership a "Capital Account"

of $12,375, a "Plant Account" of $8,932.44, and "Undistributed Profits" $73,634.50, and as to George R. Nutter, "Plant Account" $744.37 and "Capital Account" $1,031.25. Such items can not be called negligible. The capital account represented the interest of the partnership in a working cash balance and the plant account represented the interest of the partnership in such items as books, furniture, and fixtures in the law office. The partnership owned a lease upon its offices ending February 28, 1939, the value of which does not appear in the record. It seems apparent, therefore, that the partnership of which the decedent was a member at the time of his death possessed both capital and tangible assets as distinguished from the partnership in the *Bull* case. The partnership agreement recognized the capital interest of each partner, for therein reference is made to "cash capital", "capital", and "capital items", and provision is made for disposition of a member's interest in "capital, assets, receivables", etc. Second: The *Bull* case in fact strongly supports the respondent's view herein, for the Court says:

> * * * Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon firm profits and the estate is not. * * *

In this proceeding we have just the kind of contract referred to by the Court, for it is clearly true that "the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate", for the partnership agreement specifically provides that in case of the death of a partner his estate shall receive the usual percentage of net profits for 18 months "and this shall be in full of the retiring or deceasing member's interest in the capital, the assets, the receivables, the possibilities and the good will of the Firm." This is an unambiguous provision for the "sale" of the deceased partner's interest in the capital, assets, etc., in consideration of the percentage of net profits for 18 months by which "the surviving partners shall acquire it", in the language of the *Bull* case. It is not only a plain recognition by all of the partners signing such agreement of the fact of partnership capital and assets, but a careful provision for disposition thereof for a consideration. We can not and should not disregard such agreement and are by the above language from the *Bull* case forbidden so to do. In *Pope* v. *Commissioner*, 39 Fed. (2d) 420, cited in the *Bull* case, the Court said that whether there was a sale "depends largely upon what the parties intended", and the agreement was regarded as evidence of sale.

We think that the reliance of the petitioners upon the *Bull* case is not well placed, for not only were there no physical assets and no capital in that case, but there, as the Court points out, the Government contended that the amounts were both income and corpus, and strenuously asserted, in supporting the treatment of the payments to the estate as income, that the estate sold nothing to the surviving partners. The Court agrees with that assertion and points out that the Commissioner assessed the identical money and "not a right to receive the amount on the one hand, and actual receipt resulting from that right on the other" and that the Commissioner did not view the item "as the measure of value of a right passing from the decedent at death." Plainly, since in the *Bull* case the respondent did not assert the view which he takes herein, that is, that there was sale of an interest in a partnership, the agreement by the Court in such view that there was no sale is not indicative that there was none here. The language of the Court pointedly suggests the absence of the view taken in the instant proceeding. That in that case there was no attempt at valuation as of death of the contractual right is shown by the fact that the contract provided for sharing profits or losses for one year from death; yet the case involved only the amounts accrued from date of death, February 13, 1920, to the end of 1920. Such amounts were asserted to be both income and corpus. In addition, it is to be noted that the Court in that case finds that there was a "mere right of continuance of the partnership relation inuring to Bull's estate" and that, "By the terms of the agreement his estate was to sustain precisely the same status *quoad* the firm as he had, in respect of profits and losses"; also that under the stipulation the survivors were "in the same relation with the deceased partner's estate as if it were in fact the decedent himself still alive and a member of the firm." The estate had the option, 30 days after the death, of withdrawing from the partnership and adjusting then the profits or losses. Such a situation, particularly in the absence of any view or assertion of valuation of a contractual right at the date of death, is in our opinion foreign to the facts here being interpreted. This is no case of continuation of the partnership with the estate as a partner. No basis whatever exists herein for charging the estate with partnership losses. We think it clear that the conclusion in the *Bull* case was not intended to be applied to a case where the partnership contract provided for a sale or transfer of a partner's interest, for a valuable consideration.

The decedent here died at a time when the above quoted contractual provisions were in full force and effect. There was consideration for the agreement to pay, in tangible assets, and intangibles, including the lease, and "receivables" upon completed and uncompleted services

rendered prior to the death. The right to the decedent's name, which did not pass to the surviving partners, was only one element among several. Though one member of the firm expressed the view, in testimony at the hearing, that there was no good will, we accept rather the view of all the partners (including the witness) in the agreement, that there was. All of the valuable trusteeships carried on by the decedent were carried on by the partners after his demise. The decedent had and there passed to his estate the right to the enforcement of the contract, which comprised his interest in the partnership at the instant of death. The value of such contract was therefore a part of his gross estate.

In *M. W. Dobrzensky, Executor*, 34 B. T. A. 305, we considered a situation where a partnership of attorneys paid insurance premiums on the life of a member under a contract that the proceeds should be received by his estate, in case of his death, in consideration of certain interests of deceased in the firm, including good will, and right to participation in partnership profits, as well as right to use his name; and we held that the insurance proceeds were properly included in gross estate, on the theory that the partnership agreement effected an assignment, upon death, of the interests of the deceased in the law partnership, and that in consideration thereof and in lieu thereof his estate included the insurance policy.

The above quoted language from the *Bull* case cites *Hill* v. *Commissioner*, 38 Fed. (2d) 165; and *Pope* v. *Commissioner, supra*, in each of which it was held, affirming in that respect the Board, that a partnership contract and the acquisition thereunder by the survivors of the interest of the deceased partner and the receipt by his estate of a percentage of the profits for a certain period, constituted sale of the interest of the deceased partner, and that net profit paid therefor was paid in purchase of a capital asset and was not expense deductible by the new partnership. The petitioners herein, however, in substance seek to distinguish a law partnership as a "personal service partnership" from situations where, as in the *Hill* and *Pope* cases of insurance brokerage partnerships, there were capital investment and an interest in tangible and intangible assets. Passing the question whether the law partnership is any more of a personal service partnership than that of an insurance brokerage business (the *Pope* case says that insurance brokerage depends for success largely upon personal solicitation of business by members), the answer to such contention is that in the instant situation capital interest was recognized and disposed of by the partnership agreement, and further that the principle has been applied in several cases to law partnerships. In *W. Frank Carter*, 36 B. T. A. 60, the partnership agreement was that the estate should receive in full payment of the deceased partner's interest in the firm and its assets a sum equal to one-half of the last

two years' receipts by the partner, payment to be made in twelve monthly installments. Though there were no firm assets (other than fees received subsequent to the death), except the law library and office equipment, we held that there was a sale and that the surviving partners were taxable upon the income out of which payment was made and that it was not income of the estate. *United States* v. *Carter*, 19 Fed. (2d) 121; *City Bank Farmers Trust Co., Executor*, 29 B. T. A. 190, as well as *M. W. Dobrzensky, Executor, supra*, all involved law partnerships and the present question, and in each it was held that the amounts received by the estate of the deceased law partner were a part of the corpus of the estate. *Helvering* v. *Smith*, 90 Fed. (2d) 590, involved a law partnership and it was held that the partnership agreement gave the retiring member no interest in future earnings as consideration for his withdrawal; that a cash payment received was not taxable as capital net gain from sale of capital assets; but the court points out that, "It is of course possible to measure the purchase price of a partner's interest by his former proportion of future profits for a period of years," citing *Hill* v. *Commissioner, supra*, and *Bull* v. *United States, supra. Degener* v. *Anderson*, 77 Fed. (2d) 859, interprets a partnership agreement providing for continuance of the partnership to the end of the fiscal year, notwithstanding the death of a partner, though holding that there the estate of the deceased was taxable upon the income received under such contract. The court says:

The *Bull* Case, in line with earlier decisions in the lower courts, recognized that there is a distinction between measuring the value of a contract right which accrued for the decedent at the date of death and taxing income which arises in the future by virtue of the contract. * * *

Such language indicates clearly, we think, what took place in the instant case. The Commissioner did "measure the value of a contract right which accrued for the decedent at the date of death" and did not merely tax income. He explained the item as "interest in partnership" in the deficiency notice. At trial he offered evidence of past partnership earnings to show what would "constitute a fair value of 8 percent of what is expected to be received in the succeeding 18 months"; on brief he contends that "the amount actually received by the estate of the decedent by reason of the terms of the partnership agreement represents a fair measure for the value of the decedent's interest in the partnership * * *." Though the Commissioner uses the figure $34,069.99, the amount of payments after death as provided by the partnership agreement, that agreement considers the payments as purchase price for decedent's "contract right", and effect is to be given to the contract under the *Bull* case.

In *Estate of Bavier C. Miller*, 38 B. T. A. 487, we considered an insurance partnership agreement under which a deceased partner's

estate was by the surviving members paid, for 30 months after death, the share of income which the partner would have received if he had lived. Although the amount added by the Commissioner to gross estate was in the deficiency notice described as "partnership income", we considered the partnership contract as recognition by the partners that their interest in the firm had value, and said that the contract indicated "that the sum to be paid was determinable by the deceased partner's interest in profits, not as such, but as a measure by which to value his interest in the partnership at the time of his death." We therefore held that such payments, though measured by the partnership earnings, as agreed to by the partners, constituted purchase price of the deceased partner's interest in the firm, and did not constitute taxable income to the deceased partner's estate. We said:

* * * The yardstick that the parties agreed to use in measuring the value of a deceased partner's interest was the share of the profits which the decedent would have been entitled to had he lived an additional 30 months * * *.

We referred elsewhere to the recognition by the partners that their interest in the firm had value. Certainly the partners in the instant proceeding likewise recognized such value, and provided for its transfer, for a consideration, at death.

Upon brief the petitioner argues that the expression "—the others continuing the business—" appearing in the partnership agreement, as above quoted, indicates that the whole contract and provision for payment to the estate for 18 months was conditional upon the other partners continuing the business, and therefore nothing of value passed to the estate at death. To us the above-quoted language indicates rather an agreement to continue the business and we can not believe that there was any thought in the minds of the partners that death of one partner would cause the discontinuance of a lucrative law practice. The income tax returns filed for the partnership from 1930 to 1935, inclusive, are in evidence, and none indicates a net yearly income of less than $235,000. We decline to view the expression last above quoted as the expression of condition as to whether such a business should continue. If there was condition, it was fulfilled, for the business was not discontinued.

Having concluded that there should be included in decedent's gross estate the value of the contract between him and the partnership, we next inquire whether $34,069.99, the amount set by the respondent, represents the fair value thereof. The presumption is that the Commissioner's determination is correct. Obviously it was not arbitrary. Under petitioners' election, we are required to consider the value of the estate as of one year after death. At that date the 8 percent amounted to $28,069.46, and the contract still had six months to run. Charles R. Nutter had actually received during 1937, $23,279.73 representing and out of the 8 percent profits. Though under the *Maass*

case income in these amounts is not *per se* a part of the gross estate, they indicate value in the contract which produced such amount in those periods. Certainly at the end of one year the contract was worth, at least, the amount it had already produced. At the rate the contract had produced at the end of either 10 or 12 months, much more than $34,069.99 would have been produced in 18 months. Moreover, the figure used by the Commissioner is wholly consistent with the partnership earnings for several years previous to the death, which for 18 months during that period would on the average have produced considerably more than $34,069.99. We conclude and hold that the respondent did not err in adding to gross estate $34,069.99.

It follows that petitioners Charles R. Nutter and Medora A. Nutter, his wife, are not taxable upon the $23,279.73, which as sole heir and devisee of the estate he was entitled to receive and did receive during the year 1937 from the executors out of the $34,069.99 above held to be gross estate. When received by Charles R. Nutter, the amount was not income, but principal received as sole heir and under the will of George R. Nutter, and therefore was properly excluded from gross income. Sec. 22 (b), Revenue Act of 1936.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

ARUNDELL concurs only in the result.

---

STERNHAGEN, dissenting: The essence of the Commissioner's determination is that the decedent's gross estate includes his share of the partnership income for the 18 months after his death. This is contrary to the decision of *Bull* v. *United States*, 295 U. S. 247, that "the sums paid his estate as profits earned after his death were not corpus but income received by his executor and to be reckoned in computing income tax."

When it appears that the so-called "interest in partnership" is but a misnomer for the percentage of posthumous earnings, the taxpayer has demonstrated the Commissioner's error. The Board, however, postulates the decedent's interest in an assumed good will of the law firm with an assumed but unknown value and in a lease of unknown value, and adding this to decedent's percentage interest in furniture, library, and current operating fund, finds that the decedent at the time of his death owned, and by his death transferred to his estate, this percentage interest, the value of which is taken to be not less than the percentage of later profits. I think the decision is incorrect.

HARRON agrees with this dissent.