John G. Madden and Anne Madden v. Commissioner. Harry R. Freeman v. Commissioner.
John G. Madden & Anne Madden v. Commissioner
Docket Nos. 5075, 5076.
United States Tax Court
1946 Tax Ct. Memo LEXIS 143; 5 T.C.M. (CCH) 559; T.C.M. (RIA) 46158; July 2, 1946
*143 Where law partnership agreement provided for payment of a percentage of the partnership earnings to the senior partner for a limited period, and in the event of his prior death such percentage should go to his estate for the remainder of the calendar year in which his death occurred, and thereafter, if the earnings permitted, $500 per month should be paid to his wife for a period of four years or until her prior death, held, income of the partnership, paid pursuant to such agreement, not taxable to surviving partners. James J. Waters, Esq., for the petitioners. Harlow B. King, Esq., for the respondent. LEECH
Memorandum Findings of Fact and *144 Opinion LEECH, Judge: These consolidated proceedings involve deficiencies in income tax for the calendar year 1940 and the taxable period January 1, 1941 to November 30, 1941, as follows: Taxable period
Docket No.
Year 1940
1/1/41 to 11/30/41
5075
$2,176.97
$1,586.70
5076
322.44
860.48
The issues are: (1) whether a distribution of 28 per cent of the partnership profits of the law firm of Madden, Freeman and Madden, for the period June 29, 1940 to December 31, 1940, to the Estate of Terrence J. Madden, who died June 29, 1940, constitutes taxable income to the petitioners, the surviving partners, and (2) whether the amount of $5,500, claimed as a deduction by the partnership for the taxable period January 1, 1941 to November 30, 1941, representing money paid to Blanche G. Madden, widow of the deceased partner, should be added to the distributive income of petitioners. The case was submitted on oral testimony and exhibits. Findings of Fact Petitioners, John G. Madden and Anne Madden, are husband and wife. Petitioner, Harry R. Freeman, is an individual. All reside in Kansas City, Missouri. During the years 1940 and 1941, John G. Madden and Harry *145 R. Freeman (hereinafter referred to as "petitioners") were partners in the law firm of Madden, Freeman and Madden, of Kansas City, Missouri. Their respective income tax returns for the taxable periods involved were filed on the cash basis with the collector of internal revenue at Kansas City, Missouri. Terrence J. Madden, deceased, was the father of petitioner, John G. Madden. For some years the decedent engaged in the practice of law, independently, in Kansas City. In 1918 or 1919, he formed a law partnership with petitioner, Harry R. Freeman. In about 1926, John G. Madden became associated with the firm and soon thereafter the partnership of Madden, Freeman and Madden was formed. The partnership has always operated under an oral agreement. The practice of the law firm of Madden, Freeman and Madden has largely been that of trial work. In the early part of 1935, Terrence J. Madden suffered a collapse. Although he quickly recovered, it became apparent to the other partners later in that year that he was unable to carry on his activities as theretofore and the major burden of the trial work was assumed by his son, John G. Madden. During the period 1935 to 1939, the interest of the *146 decedent in the profits of the firm was 44 per cent, and that of the two other partners, 28 per cent each. Owing to his diminished activities, the decedent felt that his interest in the firm profits exceeded his contributions and he proposed a new arrangement. The proposal, in substance, was that as of January 1, 1939, Terrence J. Madden should receive 28 per cent of the net income of the law partnership for a limited period; should he die before the termination of such period such percentage of the net income of the firm should go to his estate during the remainder of the calendar year in which his death occurred and thereafter be paid to Blanche G. Madden, his wife, if she survived him and such income permitted such payment, at the rate of $500 per month for four years thereafter. Such distribution of net income was to cease in the event of her prior death. The question of capital assets was not at any time considered or discussed. The firm kept no capital account. The Federal income tax returns filed by the firm of Madden, Freeman and Madden for the years 1939, 1940 and the period January 1, 1941 to November 30, 1941, disclose gross income and deductions for depreciation on law *147 book and office equipment on a ten-year basis, as follows: Year
Income
Depreciation
1939
$125,567.14
$738.25
1940
102,632.99
803.28
1/1/41 to 11/30/41
90,374.73
791.70
Terrence J. Madden died on June 29, 1940. The net income of the firm for the period June 30, 1940 to December 31, 1940 was $26,186.76, which was distributed as follows: John G. Madden
$11,522.18 or 44%
Harry R. Freeman
7,332.29 or 28%
Estate of Terrence J. Madden
7,332.29 or 28%
The respondent determined that the sum of $7,332.29, paid to the Estate of Terrence J. Madden for the period June 30, 1940 to December 31, 1940 was income of the surviving partners and increased the income of John G. Madden in the sum of $5,820.75 and that of Harry R. Freeman, $1,369.58, totaling $7,190.33. The difference of $141.96 represents increase in deductions for partnership contributions. In computing partnership net income for the taxable period January 1, 1941 to November 30, 1941, a deduction representing payments to Blanche G. Madden of $500 per month was claimed by the partnership. The respondent disallowed the deduction and increased the interest of John G. Madden in the sum *148 of $3,666.67, and the interest of Harry R. Freeman in the sum of $1,833.33. The estate of Terrence J. Madden paid an estate tax upon the income distributed to the estate and to decedent's widow under a nonwaiver agreement. The respondent assessed income taxes against the estate and the widow for the amounts paid under the agreement and such taxes were paid. Consents under the Revenue Act of 1942 were duly filed, whereby the decedent's estate and the beneficiary accepted the payments under the agreement as income. Opinion The question presented is whether the respondent properly included in the income of the respective petitioners their pro rata share of all the income of the law partnership of Madden, Freeman and Madden, during the taxable periods involved. There is no material dispute as to the terms of the oral contract made between the partners of that firm which became effective January 1, 1939, which is fully set forth in our findings of fact. Terrence J. Madden died on June 29, 1940 and the terms of the agreement were fully performed. It is the position of the respondent that the partnership was dissolved by the death of the senior Madden; that the payments thereafter *149 made, pursuant to the 1939 agreement, were income of the new partnership, belonging to the petitioners, as surviving partners, which were used to purchase the interest of the decedent in the capital assets and good will. Estate of George R. Nutter, 46 B.T.A. 35; affd., 131 Fed. (2d) 165; W. Frank Carter, 36 B.T.A. 60. Petitioners contend that the law firm was a personal service partnership; that the 1939 agreement dealt only with the distribution of income; that there existed no good will; that the tangible assets were inconsequential and valueless for sale purposes. Bull v. United States, 295 U.S. 247; Gussie K. Barth, 35 B.T.A. 546. If the 1939 agreement can properly be interpreted as one to purchase the interest of Terrence J. Madden in the law practice carried on by the partnership at his death, the respondent properly taxed the income of the new partnership to the petitioners. Estate of George R. Nutter, supra; W. Frank Carter, supra.On the other hand, if the partners, by their agreement, intended that the partnership was to continue and they were dealing only with a distribution of *150 income and not purchasing capital assets and good will, then, under the rationale of Bull v. United States, supra, and the Barth case, supra, it was error to treat the entire income of the partnership in the taxable periods as the income of petitioners. While ordinarily the death of a partner puts an end to the partnership, as the respondent argues, the partners may by agreement provide otherwise. Hax v. Burnes, 98 Mo. App. 707; 73 S.W. 928; Edwards v. Thomas, 66 Mo. 468; Bank v. Tracy, 77 Mo. 594. We think it clear, as petitioners urge, the 1939 agreement contemplated a continuation of the partnership. They were dealing with a situation brought about by the failing health of the senior partner. The evidence discloses that when the petitioner, John G. Madden, was admitted to the firm in 1925, and later following the death of decedent's widow, Blanche G. Madden, when a new member was admitted, no account was taken of either tangible assets or good will. The evidence establishes that the partners were not dealing here with either the nominal tangible assets such as law books and office equipment or good will. At the *151 time the agreement was made in 1939, the underpreciated cost of these assets was only $2,416.51. The gross income of the firm for the year 1939 was $125,567.14. The firm was a personal service corporation. The uncontradicted and credible testimony was that capital assets were never considered, contemplated or discussed and were valueless for sale purposes. The firm kept no capital account. It appears that certain of the law books used by the firm were individually purchased by the respective partners. When partnership percentages were changed, no charge was made for capital assets. Nor do we find any evidence that good will was ever recognized as an asset. Generally, good will is not regarded as existent in professional partnerships dependent upon the personal qualities of their members. Masters v. Brooks, 132 App. Div. 874; 117 N.Y.S. 585, 589; Sheldon v. Houghton, 21 Fed. Cas. 1239. Although where the partners recognize the existence of good will, and the circumstances indicate its presence, good will, in a law partnership, will be considered as an asset capable of sale and transfer. Estate of George R. Nutter, supra.Upon the *152 record here, however, we think the partners recognized that no good will existed. Cf. Howard B. Lawton, 6 T.C. 1093 (May 21, 1946); Re Brown, 242 N. Y. 1; 150 N.E. 581. The respondent points to the fact that on the 1941 partnership income tax return only the names of two partners are shown and since depreciation was claimed, the petitioners asserted ownership of decedent's interest in the tangible assets. This, he claims, is inconsistent with their assertion that no tangible property was transferred or acquired. Petitioners reply that, if error was made, it was an accounting error. This seems plausible since it appears that on the return of the partnership covering the last six months of 1940, following decedent's death, the estate of decedent was listed as a partner. We do not think this circumstance justifies the inference the respondent suggests. We find upon this record that the parties were concerned only with the distribution of income which was regarded as belonging to the decedent if he had lived, and were not purchasing his interest in the partnership as of the date of his death. In the cases of Estate of George R. Nutter, supra, *153 and W. Frank Carter, supra, deemed controlling by the respondent, the agreements involved specifically dealt with the acquisition of good will and tangible assets which, we think, distinguishes their facts from the contract in the case at bar. Since the agreement of 1939 dealt merely with the distribution of income of a continuing partnership, and was in no sense a purchase of the decedent's interest in the partnership and its tangible assets, the respondent erroneously increased the gross income of the respective petitioners by the amounts distributed, pursuant to the 1939 agreement, between the partners in the taxable periods involved. Charles F. Coates, 7 T.C. 125 (June 13, 1946). We find it unnecessary to pass upon petitioners' alternative position that section 126 of the Internal Revenue Code, as added by section 134 of the Revenue Act of 1942, controls the situation. There being other adjustments which are not contested. Decisions will be entered under Rule 50.