Nathan Thomas Veatch and Amarette W. Veatch v. Commissioner.
Veatch v. Commissioner
Docket No. 38567.
United States Tax Court
1953 Tax Ct. Memo LEXIS 42; 12 T.C.M. (CCH) 1342; T.C.M. (RIA) 53381; November 30, 1953
Robert B. Caldwell, Esq., 1000 Federal Reserve Bank Building, Kansas City, Mo., Robert S. Eastin, Esq., and M. D. Blackwell, Esq., for the petitioners. Marvin E. Hagen, Esq., for the respondent. JOHNSON
Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in income tax for the calendar year 1949 in the amount of $166,638.52. The issue is whether a surviving partner paid certain funds to the estate of the deceased *43 partner in liquidation of the partnership, or as a payment for the deceased partner's interest in the business. Findings of Fact Some of the facts were stipulated and are hereby incorporated in our findings. Nathan Thomas Veatch and Amarette W. Veatch, husband and wife, are residents of Kansas City, Missouri. They filed a joint tax return with the collector of internal revenue for the sixth district of Missouri. Nathan Thomas Veatch will hereinafter be referred to as the petitioner. Petitioner and E. B. Black were graduate engineers and in 1909 they began working together. At one time they were partners and at another they worked in an employer-employee relationship. On January 1, 1937, under a written agreement, they formed a partnership known as Black & Veatch, Consulting Engineers, and continued as equal partners until Black's death on July 4, 1949. In Veatch v. Black, 250 S.W. (2d) 501, the provisions of the partnership agreement are set out at length. However, for our purposes, the pertinent provisions of the agreement are as follows: "VIII. 1. If either party shall die or be adjudicated bankrupt, or insolvent, or take proceedings for liquidation by arrangement *44 or composition with his creditors, the partnership shall thereupon determine as to him, and he or his executors, administrators or assigns, as the case may be, shall have no interest in common with the surviving or other partner or partners in the property of the partnership, but shall be considered in equity as a vendor to the surviving partner of the share in the partnership of the deceased or bankrupt or liquidating or compounding partner as and from the date of his death, or bankruptcy, or insolvency, or of his having compounded as aforesaid, for the price and on the terms to be arrived at under the provisions hereinafter contained. "2. The method to be used in arriving at the amount due the retiring partner, or his administrators, executors or assigns, shall be based upon the value of that partner's interest as shown by the books of the partnership as of the effective date of the dissolution, with the following exceptions: "(a) In figuring the value of the interest of said partner so retiring, the uncompleted contracts shall be handled by the following method: "By carrying the contracts then held by the partnership to completion so as to arrive at the exact amount of the *45 total fees, and the total direct charges on said contracts, and the consequent loss or profit to be derived therefrom. In determining the amount of the total fees and total direct charges on such contracts, there shall be charged to such contracts a fair proportion of the office overhead during the period of completion based upon the percentage of total office overhead incurred on both old and new contracts which the direct cost of old contracts bears to the direct cost of all contracts handled by the office subsequent to the effective date. There shall be included in the overhead the proportionate share of a monthly salary of the surviving partner not to exceed the last agreed to between the parties as a monthly drawing account. "(b) Partnership insurance shall be taken into consideration as heretofore set forth. "(c) All moneys received from charged off accounts, plan deposits forfeited, and other undisclosed assets, shall, when received, be divided equally between the parties. "(d) Unsecured liabilities and losses on book accounts ascertained after the effective date to be deducted. "IX. 1. The amount so found to be due the partner retiring as set forth in this section, *46 shall be payable to said partner, his executors, administrators or assign, in the following manner, to-wit: "(a) At the effective date of the retirement of one of the partners, the books shall be closed in the manner previously employed at the end of the calendar year, taking into account all assets and all liabilities at that date. Books of the partnership shall be continued intact until the assets have been realized, the liabilities paid, and the jobs in progress computed, as hereinbefore provided. Any new business undertaken by the surviving partner shall be recorded in a separate set of books as his individual venture. "(b) Within three months after the effective date a statement of the accounts shall be rendered by the surviving partner, and there shall be paid by the surviving partner the amount shown on the books as of that date as due said partner, less the sum of $5,000.00. Thereafter, every six months, a written accounting shall be had, and the surviving partner shall pay the amount shown by the books of the company as due the retiring partner, less the sum of $2,500.00. A final accounting and final payment shall be made of the entire interest of the retiring partner *47 within thirty days after the last contract uncompleted at the effective date shall be completed. "(c) If at any time the retiring partner shall, by the method above outlined, receive more than his interest as finally determined, his executors, administrators or assigns agree to repay such sum. "(d) The retiring partner, his administrators, executors or assigns, shall have a lien on all of the assets belonging to the partnership at the effective date of dissolution. Such lien shall be in the nature of a chattel mortgage or pledge, and in case of default in the payments as in this contract provided, said lien may be foreclosed as a chattel mortgage." In a schedule attached to the agreement there was a sample calculation which was to serve as a model in computing a partner's interest on liquidation. The actual distribution after Black's death followed the principles set forth in this computation. The partnership furnished professional services in the field of engineering. It designed and supervised the construction of water supply, electric light and power, and sewage disposal systems. Included among its clients were the Federal Government, cities, counties and other political *48 subdivisions, and utility companies throughout the United States. The partnership employed the completed contract method of accounting. Under that method all direct costs of completing a contract were charged to each contract and all advance billings and fees were credited to each contract. The direct costs of completing a contract consisted largely of salaries and expenses of employees directly relating to the performance of the contract. The salaries of certain employees whose services were not directly attributable to any particular contract, such as telephone operators, stenographers, and expenditures for lights, rent, stationery and other miscellaneous items, as well as bonuses paid to certain key employees were classed as "office overhead". At the end of each year such total expense was charged against profits on all contracts completed during the year. The balance was the net profit for the year. No capital was ever contributed to the partnership either by Black or by petitioner. The only accounts they had with the partnership represented their share of the profits, which were withdrawn, and sometimes overdrawn, from time to time. The partnership had no tangible assets other *49 than furniture, fixtures and tools which were the equipment of the business. There was never any good will carried on the books and the partners did not consider that the partnership had any good will. During the period from July 4 to December 31, 1949, the net profit on contracts completed was $428,599.22. Petitioner paid to Faye B. Black, the widow of E. B. Black and the administratrix of his estate, the sum of $214,068.13, of which $10,777.35 was paid on September 30, 1949, and the balance on August 1, 1950. This was paid in accordance with the partnership agreement, and for the year 1949. The personal account of the deceased partner on the partnership books at the time of his death indicated a credit balance of $10,777.35. Some time after the close of the calendar year 1949 a dispute arose between petitioner and the estate of E. B. Black as to the interpretation of the partnership agreement. A suit was instituted by petitioner against the administratrix of Black's estate in the Circuit Court of Jackson County, Missouri, on September 25, 1950, asking for a declaratory judgment construing the partnership agreement of January 1, 1937. In this action, petitioner maintained: *50 "* * * The true intent and meaning of said Partnership Agreement was that the surviving partner should continue the performance of partnership contracts outstanding at the date of the death of the deceased partner and should account to the estate or distributees of the deceased partner for one-half of the profits realized on such contracts upon their completion, as income to said estate or distributees, as the case might be, and not that the survivor should purchase or acquire any interest of said deceased partner in said partnership as a capital asset." The administratrix of Black's estate denied that the partnership continued after his death. She alleged on the contrary that the partnership became dissolved upon his death, and that under the terms of the partnership agreement, the petitioner became obligated to purchase Black's interest under the terms of paragraph VIII of the partnership agreement. The court decree under date of June 14, 1951, contains the following: "11. The true intent and meaning of the provisions of the partnership contract relating to the death of a partner is that the survivor shall liquidate the partnership by completing the contracts for services *51 then in force, and as they are completed, account periodically to the estate of the deceased partner for that division of the profits therefrom (one-half) which the deceased partner would be entitled to receive if living. "12. Plaintiff has conducted the affairs of the partnership since the death of E. B. Black solely as surviving and liquidating partner, and not as sole owner. * * *
"WHEREFORE, IT IS DECLARED, ADJUDGED, DECREED AND ORDERED: * * *
"6. The partnership agreement dated January 1, 1937 provides for the liquidation on [in] the partnership affairs upon the death of one partner and not for the sale of an interest in the partnership by the estate of the deceased partner to the survivor, and the sums paid and payable to defendant under such agreement are, in fact, a distribution of income accruing from the performance of contracts held by the partnership prior to the death of E. B. Black and do not represent payments by plaintiff as the purchase price of an interest in the partnership or of any other asset of property." The parties filed cross appeals to the trial court's decision and the Supreme Court of the State of Missouri in Veatch v. Black, 250 S.W. (2d) 501, *52 affirmed the trial court. The administratrix moved the transfer of the case to the Court en banc. The motion was overruled. On September 14, 1950, the administratrix of Black's estate filed a fiduciary income tax return for the estate for the fiscal year ended June 30, 1950. She reported that the estate had no taxable income for that year. Upon audit the collector of internal revenue determined that all sums received by the estate for the year 1949, on account of contracts completed in the year 1949, and the estate's share of the capital gain of Black & Veatch in the first six months of the calendar year 1949, were income of the estate. After allowing deductions for the amounts distributed by the estate to the beneficiaries, the taxable income of the estate was determined to be $46,223.85. On May 25, 1951, the Commissioner assessed the estate a deficiency in income tax in the amount of $20,791.57, with interest of $785.81. The sum of $21,577.38 was paid to the collector on June 6, 1951. On June 11, 1951, a claim for refund for this amount was filed on behalf of decedent's estate. The claim was disallowed by the collector and the administratrix filed suit in the United States District *53 Court for the Western District of Missouri, Western Division. In this suit the administratrix contended that under the terms of the partnership agreement, the amount received by her from the surviving partner was payment for the interest of her deceased husband in the partnership, and was not earnings or profits upon such interest. She concluded that the income should not have been taxable to the estate. In Black v. Lockhart, - Fed. Supp. - (June 18, 1953), the court adjudged that the administratrix was not entitled to a refund because the amount received by her was a distribution of income accruing from performance of contracts held by the partnership prior to the death of Black. Further, the payments received by the estate did not represent payments for the deceased partner's interest in the partnership, or any other asset. In its opinion the District Court stated: "I say frankly that I concur in the findings and conclusions of the State Court, and I find and conclude, from the facts before me, for the purpose of this case, that the amount received by the plaintiff was a 'distribution of income accruing from the performance of contracts held by the partnership prior to the death *54 of E. B. Black and do not represent payments by plaintiff as the purchase price of an interest in the partnership or of any other asset of property.' "It is therefore my conclusion that plaintiff is not entitled to recover and her complaint is hereby dismissed." Respondent explained the adjustment to petitioner's 1949 income tax as follows: "(a) You reported $206,931.75 as your share of the income for the period July 5, 1949, to December 31, 1949, of the business operated under the name of Black & Veatch. It is held that the entire income of such business for the period mentioned, amounting to $428,599.22, is taxable to you. Income is, therefore, increased $221,667.47." The money paid to Black's estate by petitioner was a distribution of partnership income resulting from partnership business. Petitioner is taxable only on his distributable share of the income from the business, and not upon the entire income from the business in 1949. Opinion The issue in this case is, did petitioner as the surviving partner make a distribution of partnership earnings in liquidation of the partnership, or did he purchase the deceased partner's interest? Or, stated in other words, is the *55 income of a business taxable to petitioner or is half of it taxable to the estate of petitioner's former partner? The United States District Court for the Western District of Missouri, Western Division, has already decided that half of the income is taxable to the estate of the deceased partner. Black v. Lockhart, - Fed. Supp. - (June 18, 1953). It is respondent's contention that under the terms of the partnership agreement petitioner purchased the interest of his deceased partner in the partnership. Therefore, the entire income realized from the date of Black's death to the end of the year is taxable to petitioner. Respondent properly suggests that the solution to the question depends upon the intent of the parties and that is to be derived from the terms of the 1937 partnership agreement. Both petitioner and respondent agree that it is well settled law that state law creates legal interests but the Federal statutes determine how and when they should be taxed. Burnet v. Harmel, 287 U.S. 103; see Estate of Bavier C. Miller, 38 B.T.A. 487. Respondent goes on to say that this case does not involve any questions concerning interests in property which would *56 be governed by local law. He then concludes by saying that the question involved is whether petitioner is taxable on the entire income realized by the firm of Black & Veatch during the period July 5, 1949, to December 31, 1949. The partnership in the instant case was created and engaged in business in Missouri. In that jurisdiction dissolution of a partnership takes place when a partner dies. Upon dissolution, however, the partnership is not terminated, but continues until the partnership affairs are finally wound up. [1] Now the factual question arises whether it was the intent of the partners to continue the partnership of Black & Veatch in liquidation after the death of either one of them, or whether the surviving partner was to purchase the deceased partner's interest. Many expressions *57 in the agreement are indicative of a sale, but the agreement as a whole indicates an intent of the partners to liquidate the partnership by completing the uncompleted partnership contracts. Any ambiguity arising from the partnership agreement is dispelled when we consider the record as a whole. The testimony of the petitioner and two employees of the former partnership supports our construction of the agreement. Further, the fact that neither partner recognized any good will in the firm and no good will account was set up on the books indicates that the surviving partner did not purchase the good will of the former partner. The partners made no capital contributions to the partnership, and the payments made by petitioner to the estate far exceeded the deceased partner's interest in the tangible assets of the partnership. The personal account of the deceased partner at the time of his death was only $10,777.35. The petitioner acquired nothing by reason of his payment to Black's estate. He did not pay a fixed amount for an interest in the business. He simply paid the administratrix the exact profits determined upon the completion of the partnership contracts. Another fact which supports *58 petitioner's contention is that the partnership books were continued for the completion of the contracts pending at the time of Black's death, and that separate books were set up for petitioner's newly acquired contracts after Black's death. From the entire record we can only conclude that under the partnership agreement of Black & Veatch it was the partner's intention that the partnership be liquidated upon the death of one partner, and they did not intend a sale as determined by respondent. This was also the conclusion of the Supreme Court of Missouri and the trial court of that state when they construed the partnership agreement. The issues before the Missouri state courts did not involve any questions of tax liability, but merely required a determination of property rights stemming from the partnership agreement. The sum paid to the estate by petitioner was a distribution of partnership income accruing from the completion of contracts held by the partnership at the time of Black's death. It follows that the petitioner is taxable only on his distributable share of the gain from the completion of the contracts which were in existence on July 4, 1949, and not on the entire income *59 realized by the business during the period from July 5, 1949, to December 31, 1949. Section 182, I.R.C.; Charles F. Coates, 7 T.C. 125; Sidney Hess, 12 T.C. 773; Carol F. Hall, 19 T.C. 445. Cf. Estate of George R. Nutter, 46 B.T.A. 35; affd. under sub nom. McClennen v. Commissioner, 131 Fed. (2d) 165. See also Bull v. United States, 295 U.S. 247; Estate of Joseph E. Tyree, 20 T.C. - (promulgated June 29, 1953). Decision will be entered for the petitioners. Footnotes
1. Missouri Revised Statutes, 1949, Uniform Partnership Law § 358.300. Partnership not terminated by dissolution. - On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed. (L. 1949 p. 506 § 30) § 358.310. Causes of dissolution. - Dissolution is caused * * *
(4) By the death of any partner. (L. 1949 p. 506 § 31.)↩